270 P.2d 713

FAUBION v. TUCKER.

No. 5692.

Supreme Court of New Mexico.

May 11, 1954.

Hartley & Buzzard, Clovis, for appellant.

James A. Hall, Clovis, Fred M. Standley, Santa Fe, for appellee.

SEYMOUR, Justice.

Appeal is taken from judgment on verdict in favor of plaintiff for compensatory damages of $100 and exemplary (punitive) damages of $1,125 based upon an alleged unlawful assault and battery committed by defendant on the body of plaintiff. Parties will be referred to in this decision as plaintiff and defendant.

Prior to the following events, plaintiff was an employee of defendant in the capacity of a salesman on commission. A difference arose between the parties, old friends, as to whether certain moneys constituted a commission and as to when they were to be paid by defendant to plaintiff. At about 4:30 p. m., June 30, 1952, defendant called at the home of plaintiff, who was no longer employed by the defendant; at the time, plaintiff was sitting on his front porch. A conversation took place concerning the disputed item, culminating as follows: Plaintiff said one of two things: "Well, I'm a son of a bitch, I want my money"; or, "You son of a bitch, I want my money." This variance arises understandably from the testimony of the two parties. At that point, defendant either hit plaintiff several times or pushed him against the wall and departed. This encounter lasted approximately ten minutes.

That same afternoon plaintiff filed a criminal complaint against defendant for assault in justice of peace court, and defendant was served with warrant. About 8:00 p. m. the same night, while plaintiff, his wife and a visiting lady were sitting in the living room of plaintiff's home, defendant came to the door, was admitted by

plaintiff's wife, strode into the living room, seized plaintiff by the arm and tried to force him to telephone to the justice of peace for the purpose of dismissing the criminal complaint. While there is some conflict in the testimony, the general idea was that defendant would break plaintiff's arm unless the call was made. Similar violence continued for some time. Plaintiff was adamant concerning the telephone call, which resulted in defendant's determining to take plaintiff bodily to the justice of peace. This defendant proceeded to attempt by pulling plaintiff, and dragging him by the heels to defendant's car parked in front of the house; plaintiff in the meantime resisted his own departure by hanging on to doorjambs, newel posts and such other assorted anchors as he could find. Finally, having forced plaintiff into the rear seat of the car, defendant strategically lowered the trousers of plaintiff in an endeavor to immobilize him. Plaintiff managed to escape from the opposite door of the car where he was met again by defendant and knocked to the ground. At this point, all thought it wise to call the police who soon arrived and terminated the meeting. While there are variants in and additions to these facts, they are substantially the admitted facts of the case. Plaintiff's total active participation in the evening's engagement seems to have been a refusal to telephone, a distressing attack of asthma which was brought on by the ex-citement of the afternoon and which he was treating with a number of drinks, and a consistent physical attempt to remain within the walls of his home.

■     Three points are relied upon for reversal. Defendant states his first point as follows:

"That the Court erred in refusing to give to the jury Defendant's Requested Instruction No. 5 (tr. p. 15) as follows, to-wit: 'If you believe from a preponderance of the evidence that the plaintiff, G. H. Faubion, did in a gross, insolent or angry manner, insult the defendant, J. Elmo Tucker, personally, against his honor, delicacy or reputation, then you are instructed that the plaintiff, G. H. Faubion, committed an assault and battery on the defendant, J. Elmo Tucker, unless you believe from a preponderance of the evidence that the words used by the plaintiff, G. H. Faubion, were the truth.' "

The requested instruction was based on § 41-613, 1941 Comp., a criminal statute covering assault with words. Defendant offers no reason for or argument in support of his claim of error other than the fact of the existence of the statute above cited. For that reason, if no other, it is our conclusion that the alleged error is unavailable to plaintiff. We find support for this conclusion in Robinson v. Mittry Bros., 1939, 43 N.M. 357, 94 P.2d 99, 101. As there

stated by Justice Brice: "For the convenience of this court and opposing counsel, the rule requiring the presentation of points or propositions of law as a basis for argument, should not be ignored."

Moreover as to this first point as presented by defendant, we fail to see any relevancy of the requested instruction to the issues in this case. Its only possible relevancy is in relation to defendant's point two.

For his second point, defendant states:

"That the Court erred in refusing to charge the jury as requested in Defendant's Requested Instruction No. 6 (tr. p. 16) as follows, to-wit: 'If you believe from a preponderance of the evidence that the plaintiff, G. H. Faubion, committed an assault on the defendant, J. Elmo Tucker, by words or acts, then you are instructed that the defendant had the right to self-defense and to use such force as to the defendant reasonably appeared necessary, in view of all the circumstances of the case, for the defendant's own protection.' "

The refusal of this instruction is not error. Brobst v. El Paso & Southwestern Co., 1914, 19 N.M. 609, 145 P. 258, and the very recent case of State v. Heisler, 58 N.M. 446, 272 P.2d 660, very clearly support the rule of law that to justify an assault and battery committed by one person on another on the ground of self-defense, the person assaulted must have done some overt act or made a hostile demonstration of a character to give the assailant reasonable ground to suppose himself in imminent danger. There is the further limitation that only such force may be used as a reasonably prudent man under the circumstances would believe necessary to repel the assault. Under the facts stated above, by no stretch of the imagination is there evidence that would justify an instruction to the jury on the defendant's theory of self-defense. When defendant returned to the original fray some four hours after the earlier encounter, he came as an enthusiastic aggressor. The court properly refused the requested instruction; and, if the instruction quoted under point one was in support of and a part of the theory of self-defense, it likewise was properly refused on the foregoing grounds.

Point three raises a more serious question. The court gave the following three instructions on punitive damages:

"4. You are instructed that exemplary or punitive damages, if recoverable at all, are not recoverable in this suit unless actual or compensatory damages are proven by a preponderance of the evidence."

"7. If you believe by a preponderance of the evidence that the Plaintiff is entitled to recover exemplary dam-

ages from the Defendant, then you are instructed if you believe the Plaintiff used abusive, or insulting language to Defendant, that such insulting language would mitigate the award, if any, for exemplary damages."

"13. You are instructed that if you find from the evidence that defendant struck and beat plaintiff, twisted his arm, in a rude, violent, and angry manner, or otherwise injured him, as alleged in the Complaint, and that the alleged wrongful acts were not done in self-defense, or otherwise justified as explained in these instructions, and that said alleged beating, striking, twisting of arm, and injuring of plaintiff was done in an ignominious manner before plaintiff's wife, or guest in their home, and with intent to injure his person, and for the purpose of gratifying a malicious purpose, then you may allow plaintiff, in addition to compensatory damages, exemplary damages in such an amount as in your discretion you deem necessary and proper to restrain defendant and others from the commission of like acts in the future, but not more than $15,000.00, the amount claimed in the Complaint for such alleged exemplary damages."

No objection was made to any of the foregoing instructions. Defendant offered and was refused the following instruction, the refusal of which is assigned as error:

"You are instructed that exemplary or punitive damages are not recoverable in this suit unless actual or compensatory damages are proven by a preponderance of the evidence; *you are further instructed that any award of exemplary or punitive damages must bear some reasonable proportion to the amount of actual or compensatory damages, if any.*"

It is the omission from the case of the italicized phrase in the offered instruction of which defendant complains, namely, that it is necessary to instruct the jury concerning the relationship between the amount of compensatory damages and an award of punitive damages. In other jurisdictions there is a division of authority on this question. The case law is detailed in an annotation at 17 A.L.R.2d 527.

It is our conclusion that the trial court did not err in the refusal of defendant's requested instruction. We do not believe that the instruction submitted by defendant correctly states the law. A consideration of the various rules and the cases supporting the same leads us to the conclusion that the amount of punitive damages must be left to the jury's sound discretion based on the circumstances of each individual case, but must not be so unrelated to the injury and actual damages proven as to plainly manifest passion and prejudice rather than reason and justice. Evans v. Gaisford, Utah, 1952, 247 P.2d 431. The instruction re-

quested by defendant requires a ratio between the amount of actual damages and the award of punitive damages, the validity of the ratio to be determined by the test of reasonableness. Such a test, by necessity geared to exact figures, does not seem proper to this Court or feasible for actual use.

In view of the foregoing, judgment of the trial court is affirmed.

It is so ordered.

McGHEE, C. J., and SADLER and LUJAN, JJ., concur.

COMPTON, J., not participating.