This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**TAMMY GONZALES,**

Plaintiff-Appellant/Cross-Appellee,

v.                                                                NO. 27,896

**PAUL LIVINGSTON,**

Defendant-Appellee/Cross-Appellant.

**APPEAL FROM THE DISTRICT COURT OF GUADALUPE COUNTY**
**Abigail Aragon, District Judge**

Law Offices of Daymon B. Ely
Daymon B. Ely
Albuquerque, NM

Border Law Office, P.A.
Dean Border
Albuquerque, NM

for Appellant

Paul Livingston
Placitas, NM

Pro Se Appellee

## MEMORANDUM OPINION

**BUSTAMANTE, Judge.**

This case arises from a malpractice suit brought by Plaintiff, alleging Defendant was negligent in his representation of Plaintiff by failing to timely file her appeal from a decision of the Human Rights Commission prior to the expiration of the relevant statute of limitations. The district court found in Plaintiff's favor, awarding her $54,837 in damages. Defendant appeals, arguing insufficient evidence supports both the verdict and the award, and that the district court made several evidentiary mistakes. Unpersuaded by Defendant's arguments, we affirm the district court.

**I.  FACTS**

Plaintiff was employed as the fire and safety sergeant for Wackenhut Detention Facility (Wackenhut) from 1998 until 2000. Wackenhut hired Plaintiff because of her previous experience with the fire department. She was apparently assured her lack of experience with prisoners would ensure she would not be required to "work the line" as a corrections officer. This distinction was important to her.

For some time, Plaintiff, working under Warden Eloy Mondragon, received good performance reviews. A riot occurred at Wackenhut in August 1999. After the riot, Warden Mondragon was replaced by Warden Bravo. Sometime after the change in warden, Plaintiff began to observe changes in behavior toward her that she felt were discriminatory. For example, Plaintiff received a written reprimand for an incident in which a male driver backed into and damaged a sally port. Even though Plaintiff

was the passenger rather than the driver, the male driver apparently received no formal reprimand. Plaintiff also testified she was formally reprimanded for leaving early after the conclusion of a seminar; her male counterparts received no similar reprimand despite having left at the same time as Plaintiff. Moreover, Plaintiff was apparently demoted for her performance and originally replaced by an uncertified male worker; she was brought back after one week because of the lack of the new employee's certifications. Sometime thereafter, Plaintiff was again demoted and was told she would be required to work on the line. Plaintiff resigned rather than work on the line, claiming she had received threats which had made her fear for her life.

Plaintiff filed a complaint with the New Mexico Human Rights Commission (HRC), alleging gender discrimination in violation of NMSA 1978, Section 28-1-7(A) (2001). She received an initial finding of probable cause and her claim proceeded to hearing. After losing the hearing in front of the HRC, Plaintiff was entitled to a de novo appeal in district court, by filing a complaint. The statute of limitations for her appeal ran April 8, 2002.

On April 8, 2002, Defendant attempted to file the complaint/appeal by facsimile, without filing fee, in Santa Rosa, New Mexico, just before closing. The clerk refused to file the complaint without the filing fee, and the complaint was not actually filed until April 10, 2002, when the fee was submitted. The district court

3

dismissed the complaint because it was filed outside of the statute of limitations. Plaintiff filed this malpractice action against Defendant in 2004, alleging legal negligence.

After a bench trial, the district court specifically found Defendant was negligent in his representation of Plaintiff, Defendant's conduct fell below the requisite standard of care, and Plaintiff had a greater than even chance of prevailing in the lawsuit against Wackenhut and its employees. The district court found in favor of Plaintiff, awarding her $54,837 for lost wages, benefits, and retirement, but denying her requests for attorney's fees and damages for emotional distress. Defendant appeals both the verdict and the damages award.

## II. SUBSTANTIAL EVIDENCE SUPPORTS THE DISTRICT COURT'S VERDICT

Defendant asserts insufficient evidence supports the district court's decision. Defendant argues Plaintiff failed to prove he acted negligently, failed to support her contention that she had been constructively discharged, failed to make a prima facie case for gender discrimination, and failed to prove adequate job performance, thus failing to prove she had a reasonable chance of prevailing on the underlying appeal.

## A. Standard of Review

In reviewing a sufficiency of the evidence claim, we consider whether substantial evidence supports the district court's decision. "Substantial evidence is

4

such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Landavazo v. Sanchez*, 111 N.M. 137, 138, 802 P.2d 1283, 1284 (1990). We view the evidence in the light most favorable to the prevailing party and disregard evidence and inferences to the contrary. *Weidler v. Big J Enters., Inc.*, 1998-NMCA-021, ¶ 30, 124 N.M. 591, 953 P.2d 1089 (filed 1997). Our concern is not whether substantial evidence exists to support the opposite result, but rather whether substantial evidence supports the result reached. *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177 (filed 1996).

"Additionally we will not reweigh the evidence nor substitute our judgment for that of the fact finder." *Id.* Where there is conflict in the testimony, we therefore defer to the trier of fact. *Buckingham v. Ryan*, 1998-NMCA-012, ¶ 10, 124 N.M. 498, 953 P.2d 33 (filed 1997). Finally, we also presume the district court is correct. The burden is on the appellant to clearly demonstrate that the district court erred. *Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 111 N.M. 6, 8, 800 P.2d 1063, 1065 (1990).

**B.      Substantial Evidence Supports the District Court's Finding Defendant's Actions Were Negligent and the Proximate Cause of a Loss to Plaintiff**

For a malpractice claim, a plaintiff must prove: (1) she employed the defendant attorney, (2) her attorney neglected a reasonable duty, and (3) the negligence resulted

in and was the proximate cause of loss to the plaintiff. *Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor*, 115 N.M. 159, 162-63, 848 P.2d 1086, 1089-90 (Ct. App. 1993). Defendant disputes all three elements on appeal. Defendant asserts he was not employed as Plaintiff's attorney, and that he fulfilled any duty he had by faxing the complaint before the expiration of the statute of limitations. Defendant further asserts there was insufficient evidence his actions were the proximate cause of any loss to Plaintiff.

First, Defendant argues, without any citation to legal authority or supporting documentation, he was not representing Plaintiff at the time the statute of limitation ran on the HRC appeal. He claims his representation of Plaintiff was always intended to be limited to the HRC hearing and that he communicated this limitation to Plaintiff. He also asserts that, even assuming he had a duty to Plaintiff, his facsimile filing of the complaint was enough to discharge his duties because the Guadalupe County Clerk should have accepted the facsimile complaint for filing. We disagree and affirm the district court.

The question of whether Defendant represented Plaintiff at the time the HRC appeal was to be filed is a question of fact for the fact finder, in this case the district court. Here, the district court made detailed findings of fact and conclusions of law. Those findings indicate the district court determined a legal relationship continued to

6

exist between Plaintiff and Defendant at the time Defendant untimely filed the appeal; we see no reason to disagree. *See Herrera v. Roman Catholic Church*, 112 N.M. 717, 721, 819 P.2d 264, 268 (Ct. App. 1991) ("Unless clearly erroneous or deficient, findings of the trial court will be construed so as to uphold a judgment rather than to reverse it.").

The sole evidence of the termination of the legal relationship Defendant apparently introduced was Defendant's testimony. Defendant apparently did not provide any written evidence the relationship had been terminated nor did he provide any evidence he had complied with the notice requirements found in the Rules of Professional Responsibility. *See, e.g.,* Rule 16-116(D) NMRA.

Plaintiff's testimony contradicted Defendant's; the question of representation was therefore a matter of whose testimony was more credible. Plaintiff stated she had hired Defendant as her attorney and that she had little or no contact with Defendant after her hearing before the HRC until she received a call from him requesting she take a filing fee to the district court. Moreover, Defendant attempted to file the complaint, which belies his suggestion he was under the impression he had no duty to Plaintiff.

The district court apparently found Plaintiff more credible than Defendant. As previously stated, "when there is a conflict in the testimony, we defer to the trier of

7

fact." *Buckingham,* 1998-NMCA-012, ¶ 10. We therefore accept the district court's determination that a legal relationship existed between Plaintiff and Defendant.

Further, we decline to accept Defendant's contention his facsimile filing of the complaint, minutes before closing, on the last day prior to the running of the statute of limitations, without filing fee, was sufficient to discharge any duty he may have had toward Plaintiff. Defendant suggests the problem lies with the clerk because she improperly rejected the complaint contrary to Rule 1-005(E), (F) NMRA (2006). *See also, Ennis v. Kmart Corp*., 2001-NMCA-068, ¶¶ 6-10, 131 N.M. 32, 33 P.3d 32 (holding court clerk lacks discretion to refuse filing because of technical violations). Here, however, the clerk did not refuse to file the complaint because of a "technical violation," but rather because she was following statutory requirements.

Plaintiff's HRC appeal was subject to the guidelines found in Rule 1-076(B) NMRA, which governs de novo appeals to the district court and states: "An appeal from the Human Rights Commission may be taken by filing a notice of appeal in the form of a complaint in the district court in the manner provided by these rules for the filing of a civil action in the district court." That same rule states that the clerk shall docket the appeal upon filing of the notice and the filing fee. Rule 1-076(H). Additionally, the rules for filing civil actions state that, with limited exceptions, "a filing fee shall be collected in civil matters in the amount prescribed by law for the

docketing of any cause, whether original or reopened or by appeal or transfer from a court of limited jurisdiction." Rule 1-099 (A) NMRA. Finally, Rule 1-005.1(D) also only permits facsimile filing of documents in cases where a fee is not required.

Clearly, the rules required Defendant to file the complaint in person, accompanied by a filing fee. Defendant's error, rather than the clerk's, led to Plaintiff's complaint being dismissed. This is buttressed by the testimony of Plaintiff's expert, Diane Garrity (Garrity) who testified Defendant's actions were below the required standard of care relevant to an attorney and his client. *Andrews v. Saylor*, 2003-NMCA-132, ¶ 16, 134 N.M. 545, 80 P.3d 482 (permitting expert testimony to assist the fact finder in resolving the hypothetical case and to determine whether a lawyer violated the standard of care); *Rodriguez v. Horton,* 95 N.M. 356, 359, 622 P.2d 261, 264 (Ct. App. 1980) (stating that the testimony of another attorney to the applicable standards is usually necessary in legal malpractice cases). We therefore affirm the district court's finding that Defendant's negligent conduct directly caused the dismissal of Plaintiff's case against Wackenhut.

Turning next to the issue of proximate cause, in legal malpractice actions involving a failure to appeal, proximate cause "ultimately reduces to a prediction as to what the outcome of a hypothetical appeal would have been." *Andrews,* 2003-NMCA-132, ¶¶ 1, 15. The success of the hypothetical appeal is a question of

fact for the fact finder. *Id.* ¶ 16. The party bearing the burden of proof need only persuade the fact finder that "the likelihood of a favorable outcome in the hypothetical appeal was greater than even." *Id.* ¶ 15.

In Plaintiff's case, because her underlying case was based on gender discrimination, she was required to demonstrate she had a greater than even chance of proving, by either indirect or direct evidence, Wackenhut intentionally discriminated against her on the basis of her sex. *See, e.g., Sonntag v. Shaw,* 2001-NMSC-015, ¶ 11, 130 N.M. 238, 22 P.3d 1188 (explaining that, under Section 28-1-7(A), a plaintiff must prove intentional discrimination).

Defendant asserts Plaintiff failed to make her case on essentially two grounds, negating the required element of proximate cause. First, Defendant argues there was a lack of evidence proving Plaintiff was constructively discharged. Constructive discharge permits an employee to recast a resignation as a de facto firing, depending on the circumstances surrounding the employment relationship and the employee's departure. Because Plaintiff resigned and was not terminated, the parties agree she would be required to prove constructive discharge as part of establishing wrongful termination. *See Gormley v. Coca-Cola Enters.*, 2005-NMSC-003, ¶ 9, 137 N.M. 192, 109 P.3d 280 (explaining the concept of constructive discharge). Plaintiff was therefore required to demonstrate her employer made working conditions intolerable,

and that when viewed objectively, a reasonable person would be compelled to resign. *Id.* ¶ 10.

Defendant argues Plaintiff improperly failed to permit her employer an opportunity to "work out a problem" because she had predetermined she would resign. He further argues Plaintiff's alleged fear was entirely subjective, rather than objective, because other female employees worked on the line. However, our review of the record indicates Plaintiff testified to a specific reason for her fear; she was told on "numerous occasions" that a female officer would be killed and that she, specifically, had been warned she was the next target. Her testimony indicates she resigned because she feared for her life. Plaintiff's employment law expert, Garrity, also testified that, based on her experience, a review of a deposition of Plaintiff's prior supervisor, and Plaintiff's testimony, she thought Plaintiff's fears were sincere and reasonable, given the threats and recent riot. *See Andrews*, 2003-NMCA-132, ¶ 16 (also permitting expert testimony to assist the fact finder in resolving the hypothetical case).

While it is true the HRC came to a different conclusion regarding constructive discharge, the district court clearly gave more credibility to the testimony of Plaintiff and Garrity than had the HRC. This may have been at least partly because of Defendant's lack of rebuttal witnesses at trial. Regardless, the district court was not

11

bound by the HRC findings in this case, and, as previously stated, we do not reweigh issues of credibility on appeal. *Id.* ¶ 15 (stating that in cases of legal malpractice involving a failure to appeal, the fact finder's answer to the question of who would likely prevail does not change the result in the earlier lawsuit and does not establish precedent for future lawsuits.) We hold sufficient evidence supports Plaintiff's constructive discharge.

Second, Defendant asserts Plaintiff failed to establish a prima facie case of gender discrimination and that the clear weight of the evidence establishes it was instead incompetence and misconduct that led to Plaintiff's demotion and subsequent resignation, rather than any discrimination. Defendant again cites to the HRC's findings of fact, the non-binding nature of which we have already addressed. He also claims Plaintiff failed to demonstrate she was treated less favorably than male employees in similar positions. However, this issue again goes to credibility. As Plaintiff points out, she testified to at least three instances where she was treated less favorably than her male counterparts: (1) the sally port incident, (2) the seminar incident, and (3) her original demotion and replacement by a non-certified male worker. Garrity testified her review of depositions and the record indicated that Plaintiff had been doing a good job, that she followed instructions, that she did not call in sick, that she followed through, that she got along well with the other staff, and

that she was well qualified for her position. Further, both Plaintiff and Garrity testified Wackenhut failed to follow their own disciplinary procedures, which stated Plaintiff should have been given verbal warnings before she was issued a written reprimand.

Defendant asserts some of Plaintiff's testimony suggests Plaintiff's verbal reprimands were for incompetence or because of her unique position, rather than because of her gender. The district court clearly disagreed with this characterization of Plaintiff's testimony, instead viewing the actions as discriminatory in nature. As we have previously explained, the strength of a plaintiff's case is factual in a legal malpractice case and we will not reweigh the evidence. *Id.* ¶ 16.

As previously discussed, the district court entered detailed findings of fact and conclusions of law sufficient to support the verdict in favor of Plaintiff. Specifically, the district court found: (1) Plaintiff had hired Defendant to represent her, (2) Defendant had acted negligently in that representation, (3) Defendant's negligence caused the dismissal of Plaintiff's lawsuit, and (4) Plaintiff had a greater than even chance of prevailing in the lawsuit against Wackenhut and its employees. Based on the record, findings and briefs, we see no reason to disturb these findings and hold substantial evidence exists to support the verdict.

**C.    Substantial Evidence Supports the District Court's Award of Damages**

"We will uphold a [district] court's [award of damages] if . . . supported by substantial evidence." *Chavarria v. Fleetwood Retail Corp.*, 2006-NMSC-046, ¶ 12, 140 N.M. 478, 143 P.3d 717.  While we agree with Defendant that damage awards must be more than merely speculative, we also note "[p]recise mathematical computation is not required." *Ledbetter v. Webb*, 103 N.M. 597, 604, 711 P.2d 874, 881 (1985).  Reasonable certainty is enough and ordinarily an award of damages will be upheld unless the amount awarded is "so grossly out of proportion to the injury received as to shock the conscience."  *Martinez v. Ponderosa Products, Inc.,* 108 N.M. 385, 386, 772 P.2d 1308, 1309 (Ct. App. 1988).

Here, contrary to Defendant's assertions of speculation, testimony supports the district court award.  Both Plaintiff and Plaintiff's expert, Garrity, testified as to Plaintiff's damages.  Specifically, Plaintiff testified as to her annual income and that her tax returns were indicative of said salary.  She further testified she had been unable, despite numerous attempts, to find comparable employment.  Garrity testified how employment attorneys calculate damages including lost wages, emotional distress and attorney's fees.  The testimony further indicated Plaintiff's lost wage claim alone was worth $54, 837 and that Garrity's calculations were consistent with how both she and other employment lawyers regularly calculate lost wages.

Defendant disputes this testimony, but this, again, is an issue of credibility left to the district judge. Moreover, we are not persuaded that Plaintiff's testimony is per se speculative simply because her tax returns were prepared by a tax service. The district judge properly exercised her discretion, weighing the testimony and determining Plaintiff had sufficiently proven losses in wages, benefits, and retirement, but that she had failed to prove damages for emotional distress or attorney's fees. We therefore find sufficient evidence supports the district court's decision.

**III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY PERMITTING GARRITY TO TESTIFY ABOUT FORMER DEPUTY WARDEN SPRUNK'S DEPOSITION TESTIMONY OR BY REFUSING TO RE-OPEN TESTIMONY**

Defendant asserts the district court erred in two evidentiary decisions. First, Defendant argues the district court improperly permitted Garrity to testify concerning former Deputy Warden Sprunk's (Sprunk) deposition and that the court improperly relied on said testimony. Second, Defendant argues the court improperly denied its request to re-open testimony to permit Defendant to call Plaintiff on direct examination. Unpersuaded by these arguments, we affirm the district court on both issues.

## A. Standard of Review

The admission or exclusion of evidence is reviewed for abuse of discretion. *Coates v. Wal-Mart Stores, Inc.*, 1999-NMSC-013, ¶ 36, 127 N.M. 47, 976 P.2d 999. When reasons both supporting and detracting from a decision exist, there is no abuse of discretion. *Talley v. Talley*, 115 N.M. 89, 92, 847 P.2d 323, 326 (Ct. App. 1993). We assume the district court is correct and the burden is therefore on the appellant to clearly demonstrate the district court's error. *Akins v. United Steelworkers of America, AFL-CIO, CLC, Local 187*, 2009-NMCA-051, ¶ 40, 146 N.M. 237, 208 P.3d 457, *cert. granted*, 2009-NMCERT-005, __ N.M. __, __ P.3d __ (No. 31,637, May 13, 2009). Moreover, "[i]n a non-jury case, the trial court is presumed to have disregarded incompetent evidence, absent a showing that the court was influenced thereby." *In re I.N.M.*, 105 N.M. 664, 669, 735 P.2d 1170, 1175 (Ct. App. 1987). We may affirm a district court's ruling for any reason so long as reliance on the new reason would not be unfair to the appellant. *Meiboom v. Watson*, 2000-NMSC-004, ¶ 20, 128 N.M. 536, 994 P.2d 1154.

## B. Rule 11-703 NMRA Permits an Expert to Testify to Facts Relied on in Formulating Her Opinion, Including Otherwise Inadmissable Evidence

Defendant argues the district court erroneously relied on Sprunk's out-of-court deposition when formulating its findings. He argues that, while the court may have

16

been entitled to "hear" those portions of the deposition relied on by Garrity in forming her expert opinion, it was improper for the deposition material to be "transmuted" into findings of fact.

Defendant relies on Rule 1-032 NMRA for his arguments. We, however, note that it is actually Rule 11-703 which governs this type of evidence. Rule 11-703 states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

As discussed at trial, Garrity used the deposition testimony of Sprunk, who had day-to-day dealings with Plaintiff and her job performance, in formulating her expert opinion. Pursuant to Rule 11-703, she is permitted to testify to these facts. *See also Lopez v. City of Albuquerque*, 118 N.M. 682, 684, 884 P.2d 838, 840 (Ct. App. 1994) (permitting the admission of otherwise inadmissable evidence where said evidence is introduced as the basis for an expert's opinion). As previously discussed, the fact finder is entitled to rely on such testimony in cases of legal malpractice. Moreover, this case involves a bench trial. There was therefore obviously no requirement that

17

the district court engage in any formal balancing test between the probative value and prejudicial effect of the deposition testimony.

We also note that Defendant appears to have at least partially waived his right to object to the introduction of Sprunk's deposition. During Defendant's cross-examination of Plaintiff, Plaintiff's counsel informed the district court and Defendant that the questions being asked "open the door to Officer Sprunk's investigation." Plaintiff's counsel stated he would seek to "include Officer Sprunk's deposition or portions of that investigation." Defendant responded "[t]hat's understood." Further, even were we to find the district court erred in issuing findings based on Sprunk's deposition, Defendant has failed to demonstrate any prejudice. Even were we to find specific findings improper, the district court was entitled to rely on Garrity's testimony and conclusions, including her review of Sprunk's deposition. The result would therefore have been the same. "On appeal, error will not be corrected if it will not change the result." *In re Estate of Heeter,* 113 N.M. 691, 695, 831 P.2d 990, 994 (Ct. App. 1992). Further, those findings were not necessary to the verdict and we have previously held "erroneous findings of fact not necessary to support the judgment of the court are not grounds for reversal." *Downs v. Garay*, 106 N.M. 321, 323, 742 P.2d 533, 535 (Ct. App. 1987).

18

**C.    The District Court Did Not Abuse its Discretion by Refusing to Re-open Witness Testimony or Denying Defendant's Motion for a New Trial**

The bench trial was held in 2007. Plaintiff presented three witnesses: former Clerk Georgia Gomez, Plaintiff, and Garrity. Plaintiff rested and Defendant testified. Directly after Defendant testified, the district court asked whether Defendant had any other witnesses. Defendant's counsel replied he did not, but thereafter Defendant reminded counsel he wanted to call Plaintiff on direct. Defense counsel then attempted to correct his error, but Plaintiff objected, claiming the other side had already closed their case. The district court agreed, noting Defendant had ample time to cross-examine Plaintiff, and directed the parties to proceed to closing arguments. Defendant subsequently brought a motion to re-open testimony, but that motion was denied.

Defendant argues the district court's decision and subsequent refusal were an abuse of discretion, as cross-examination of a witness is limited to the subject matter of the direct examination and Plaintiff testified before Plaintiff's expert. Under the specific circumstances of this case, we hold the district court's actions were not an abuse of discretion because Defendant had ample opportunity to examine Plaintiff and Defendant has failed to show any prejudice.

As Defendant states, Rule 11-611(B) NMRA limits cross-examination to the "subject matter of the direct examination and matters affecting the credibility of the witness." Moreover, Defendant also correctly points out that Rule 1-040(C)(3) NMRA permits the court to allow parties to introduce additional evidence after the regular close of trial, and Rule 1-059(A) NMRA gives the court discretion to re-open the judgment, take additional testimony, or amend its findings.

We begin by noting the latter two rules do not require the court to do anything. Instead, they simply permit the court to correct possible problems at its discretion. Moreover, while we may agree it might have been preferable for the district court to permit additional testimony, there is every indication Defendant had ample opportunity to examine Plaintiff during the lengthy cross-examination. It appears Plaintiff's counsel did not try to limit Defendant's cross-examination and that Defendant's cross-examination was lengthy.

Defendant has also failed to demonstrate he has suffered any prejudice as a result of the district court's decision. Defendant has not suggested the court's decision resulted in a denial of his examining Plaintiff on any substantive topic, nor has he provided this Court with any specific examples of relevant questions he would have asked but for the district court's denial of his request to re-open testimony. We reiterate we do not consider errors that would not change the result. *In re Estate of*

*Heeter*, 113 N.M. at 695, 831 P.2d at 994. Given the particular facts in this case, we affirm the district court's decision.

**IV. CONCLUSION**

We hold substantial evidence supports both the district court verdict and damage award and that the district court did not abuse its discretion with regard to either evidentiary issue. We therefore affirm the district court.

**IT IS SO ORDERED.**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Judge**

_____

**LINDA M. VANZI, Judge**